# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

WEI LU,

       Plaintiff,

v.                                                          CV 13-0531 WPL/ACT

KEN CHRISTENSEN, Individually
and in his official capacity as San Juan
County Sheriff, SAN JUAN COUNTY
SHERIFF'S OFFICE, ALAN JAMISON,
Individually and in his official capacity,
JACOB SANCHEZ, Individually and in
his official capacity, DAVID McCALL,
Individually and in his official capacity,

       Defendants.

## MEMORANDUM OPINION AND ORDER

Wei Lu, the owner of a massage parlor in Farmington, brought a lawsuit against the San Juan County Sheriff's Office, the San Juan County sheriff, and three sheriff's deputies for searches and seizures that took place at her business and home as a result of Defendants' suspicion that she managed a house of prostitution. Lu alleges that, because of her Asian heritage, the deputies falsely arrested her, failed to return personal belongings and cash, and violated her constitutional rights. (Doc. 1 at 16-18.) Defendants have filed a motion for summary judgment, arguing that they are entitled to qualified immunity because they had probable cause to obtain search warrants, arrest Lu, and seize evidence from the searches. (Doc. 27 at 2.) Defendants also argue that Lu has provided no evidence that the searches and seizures were based on race (Doc. 27 at 13) or that there was any governmental custom or policy serving as the

impetus for such searches and seizures (Doc. 27 at 15). I will grant in part and deny in part Defendants' motion.

FACTUAL & PROCEDURAL BACKGROUND

Lu is an Asian American woman whose primary language is Mandarin Chinese. (Doc. 1 at 10.) She owns Asian Massage, a massage therapy business located in Farmington, New Mexico. (*Id.*) Deputies Alan Jamison, Jacob Sanchez, and David McCall belong to the San Juan County Sheriff's Office Special Enforcement Team ("SET"), a "proactive" group established to "identify, arrest and successfully prosecute recidivists, target[] repeat offenders, dismantle[e] [sic] criminal groups, and address quality of life issues." (*Id.* at 11 (internal quotations omitted).)

In August or September 2012, SET began surveillance of Lu and her employees for indicators that Asian Massage was operating as a brothel. (*Id.* at 12.) Posing as customers, SET also visited Asian Massage and attempted to obtain sexual favors such as "happy endings"[1] during their massages. (*Id.* at 13.) Neither Lu nor her employees provided any of the SET officers with a happy ending during the investigations. (*Id.* at 13; *see also* Doc. 2 at 2.) However, McCall alleged that one of the masseuses made a gesture during a massage meaning that she wanted to give a happy ending. (Doc. 1 at 13; Doc. 43 Ex. 1 at 9.) Further, McCall and Sanchez found that one of Lu's employees went by the name of Tina, which was a name identified on an erotic massage website as one of the masseuses at "Asian Massage." (*Id.*) In a later massage on October 10, 2012, Sanchez communicated with the masseuse to perform a "hand job," and although the masseuse was "apparently enticed," Sanchez left the massage parlor before this

---

[1] According to Wiktionary, a "happy ending" is "[a] handjob, especially one after a massage." *Happy ending*, WIKTIONARY (Dec. 9, 2013, 9:52 AM), http://en.wiktionary.org/wiki/ happy_ending. For alternate definitions, see also *Happy ending*, URBAN DICTIONARY (Jan. 25, 2003), http://www.urbandictionary.com/define.php?term=happy%20ending.

"happy ending" could occur. (*Id.* at 13-14; Doc. 2 at 2-3.) While at Asian Massage, the officers also did not see a massage license posted in the building. (Doc. 1 at 13.)

On October 30, 2012, SET officers executed a search warrant at Asian Massage, searching for "condoms, lubricants, ledgers, books, instruction manuals describing sexual acts, and large amounts of cash from the earnings of prostitution." (*Id.* at 14; *see* Doc. 43 Ex. 1.) Officers also arrested Lu on the same date (Doc. 1 at 14); defendants have not provided to the Court an arrest warrant for Lu (*see* Doc. 43). During the search of the business and vehicle, the officers arrested one of Lu's employees as well pursuant to an arrest warrant (Doc. 43 Ex. 3 at 27), obtained a confession from her through the help of a Mandarin Chinese interpreter (Doc. 1 at 14; Doc. 2 at 3), and charged her with prostitution and failure to have documentation that she was a licensed massage therapist (Doc. 43 Ex. 3 at 28). SET officers next searched Lu's home, where she resided with her employees. (Doc. 1 at 15; Doc. 2 at 4; Doc. 45 Ex. 1 at 11.) During these raids, SET officers seized property and cash that continue to be held as evidence. (Doc. 1 at 14-15; Doc. 2 at 3-4.)

Defendants charged Lu with failing to display a license or registration and doing business without a license or registration, both misdemeanors that were later dismissed. (Doc. 1 at 15.) Neither Lu nor her employees were convicted of prostitution or any prostitution-related crime. (*Id.* at 16.)

Lu has sued Ken Christensen, individually and in his official capacity as San Juan County Sheriff; the San Juan County Sheriff's Office; and Alan Jamison, Jacob Sanchez, and David McCall, all in their individual and official capacities.[2] (*Id.* at 10.) Lu alleges that the SET

---

[2] Suits against government employees in their official capacities are generally construed as against the governmental entity itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted); *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).  Therefore, I

conspired to discriminate against her based on her national origin, violating her civil rights and entitling her to relief under 42 U.S.C. §§ 1983, 1985. (*Id.* at 16-18.) Lu claims that defendants violated her equal protection, due process, and freedom from unreasonable search and seizure rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article II of the New Mexico Constitution. (*Id.*) She also claims that she was subjected to false arrest and conversion. (*Id.*)

Defendants have moved for summary judgment on three bases. (Doc. 27.) First, they argue that they are entitled to qualified immunity because there was probable cause to arrest Lu and to seize evidence. (*Id.* at 9-13.) Second, Defendants argue that there is no evidence that the searches and seizures were based on Lu being an Asian American. (*Id.* at 13-15.) Finally, Defendants argue that the San Juan County Sheriff's Office and Christensen are entitled to dismissal because the SET had probable cause for the searches and seizures, or, in the alternative, that no governmental custom or policy prompted constitutional violations. (*Id.* at 15-16.)

STANDARD OF REVIEW

### I.     Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears "the initial burden of showing that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

---

treat the suits against Christensen, Jamison, Sanchez, and McCall as a suit against San Juan County. Further, a suit against a department within a governmental entity is also generally construed as a suit against the governmental entity itself. *Singh v. Curry Cnty. Sheriff's Office*, No. 10-cv-910 MV/WPL, Doc. 6 at 2 (D.N.M. Jan. 26, 2011); *see Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985); *Brandon v. Holt*, 469 U.S. 464, 472 (1985). I therefore construe the suit against the San Juan County Sheriff's Office as against San Juan County as well.

Once the moving party has met this burden, the nonmoving party must identify specific facts that show the existence of a genuine issue of material fact requiring trial on the merits. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Id.* A mere "scintilla" of evidence is insufficient to successfully oppose a motion for summary judgment. *Id.* at 252. The record and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmovant. *See Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).

In a case such as this, where the burden of persuasion at trial would be on the nonmovant, the movant can meet Rule 56's burden of production by either (1) providing affirmative evidence negating an essential element of the nonmovant's claim or (2) showing the Court that the nonmovant's evidence is insufficient to demonstrate an essential element of the nonmovant's claim. *Celotex*, 477 U.S. at 331 (citations omitted). Evidence provided by either the movant or the nonmovant need not be submitted "in a form that would be admissible at trial." *Id.* at 324. Rather, the content of the evidence presented must be capable of being presented in an admissible form at trial. *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006). For example, parties may submit affidavits to support or oppose a motion for summary judgment even though the affidavits constitute hearsay, provided that the information can be presented in another, admissible form at trial, such as live testimony. *See* FED. R. CIV. P. 56(c)(4); *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010); *Trevizo*, 455 F.3d at 1160.

## II.        Qualified Immunity

The purpose of qualified immunity is to shield government officials from suit so that "bare allegations of malice [do] not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982). Qualified immunity is broad and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). When a defendant moves for summary judgment on the basis of qualified immunity, it is the plaintiff's burden to show that: "(1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). Furthermore, "[i]f, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he . . . is entitled to judgment as a matter of law." *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008) (internal quotation marks omitted).

### DISCUSSION

## I.        Whether SET Had Probable Cause To Conduct Searches and Arrest Lu

Probable cause with respect to an arrest "exists where facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent man in believing that an offense has been or is being committed." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1166 (10th Cir. 2003) (quotation omitted). With regard to a search, probable cause exists "when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Grubbs*, 547 U.S. 90, 95 (2006). That is, there must be a "nexus" between the items and the location to be searched.

6

*United States v. Harris*, 735 F.3d 1187, 1190 (10th Cir. 2013) (quoting *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005) (brackets omitted).

"Only where [a] warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." *Malley*, 475 U.S. at 344 (internal citation omitted). In *Malley*, the Supreme Court found that the question in a § 1983 qualified immunity case involving an arrest warrant is "whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Id.* That is, "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id.* at 340; *see also Beard v. City of Northglenn*, 24 F.3d 110, 114 (10th Cir. 1994) ("To impeach an otherwise valid warrant . . . requires proof that the affiant seeking the warrant knew that the challenged information was false or that he had a reckless disregard for its truthfulness."). Courts also apply this objective reasonableness standard to qualified immunity defenses regarding search warrants. *See Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244-45, 1250-51 (2012); *see also Poolaw v. Marcantel*, 565 F.3d 721, 735 (10th Cir. 2009).

Because Lu only alleges that SET officers Jamison, Sanchez, and McCall (the SET defendants) participated in the searches and arrest (*see* Doc. 1), I will address the actions of these three officers separately and postpone discussion of the potential liability of Christensen and San Juan County for the actions of the SET until later in this order. The SET defendants claim that they are entitled to qualified immunity because they performed a comprehensive investigation and because the evidence shows the existence of probable cause to arrest Lu and to search. (Doc.

27 at 11.) They assert that their "investigation stemmed from reports from multiple separate reliable sources, the Director of Region II Narcotics, a resident of Farmington personally known to Jamison, and Detective Sergeant Robert Perez of the Farmington Police Department. These reports triggered SET's comprehensive investigation, not an immediate search and seizure . . . ." (*Id.* at 13.) I address the arrest and each of the searches described in the complaint individually to determine whether probable cause existed. In order to do so, I cannot rely upon the affidavit attached to the Motion for Summary Judgment (Doc. 27 Ex. A) because it contains information not contained in the affidavits for warrants. I can only rely on the affidavits for the warrants themselves, as qualified immunity depends on whether a reasonably well-trained officer would have known that his affidavit failed to establish probable cause. *Malley*, 475 U.S. at 344; *Beard*, 24 F.3d at 114.

    A.  <u>Search Warrant for Business and Vehicle</u>

       *1.  Affidavit for Search Warrant*

On October 30, 2012, McCall signed an affidavit in support of a search warrant for Lu's massage business. (Doc. 43 Ex. 1 at 5-11.) McCall stated in the affidavit that the SET had received information that Asian Massage was "possibly a house of prostitution" and that upon conducting "prolonged surveillance" of the business, the SET team ascertained that all of Asian Massage's clientele were male. (*Id.*) McCall further attested that he and Sanchez entered the business posing as clients on September 6, 2012. (*Id.* at 6-7.) McCall spoke with one of the employees, who informed him that "I work for you for 'Teepo.'" (*Id.* at 7.) To explain, she bent her fingers as if to grasp a cylindrical object and pumped her hand up and down. (*Id.*) McCall had learned in his training that this motion indicates masturbation. (*Id.*) Sanchez then purchased a massage from a woman named Tina, whose name matched that of a woman from Asian

Massage mentioned on an erotic massage website that Sanchez had reviewed. (*Id.* at 7-8.) Tina did not provide a happy ending, but she told Sanchez to return for a "really good time." (*Id.*)

According to McCall's affidavit, he next posed undercover as a customer of Asian Massage on October 10, 2012, while wearing a wire and a digital recorder. (*Id.*) When he first arrived at the business, McCall looked for a massage license but did not see one. (*Id.*) Later, on the massage table, Lu's employee Li Jiang attempted to pull down McCall's boxer shorts. (*Id.*) McCall told her that he was shy and wanted to keep his boxer shorts on. (*Id.* at 9.) Li Jiang later inquired, "You want Happy?" (*Id.*) McCall asked whether she meant a "happy ending," and Li Jiang made a stroking motion with her hand that McCall recognized as manual stimulation of genitals. (*Id.*) McCall asked, "You would do that?" (*Id.*) Li Jiang motioned for him to be quiet and whispered, "For you," then agreed that she would "do that for a tip." (*Id.*) On cue, Jamison texted McCall, and McCall informed Li Jiang that he had to leave for a work emergency. (*Id.*)

Sanchez also visited Asian Massage on October 10, 2012, for the purpose of receiving a massage from "Tina." (*Id.*) According to Sanchez's report, from which McCall quotes, Sanchez asked Tina for a "massagee" about halfway through his massage and gave her a hand signal for "hand job." (*Id.* at 10.) After Sanchez made the hand motion for a while, Tina asked if he wanted one, and he stated that he did. (*Id.*) He asked how much, and she quietly said $60. (*Id.*) As with McCall, Jamison then texted, and Sanchez told Tina that he had to return to work. (*Id.*)

McCall's affidavit then describes the SET officers' experience at Asian Massage on October 30, 2012. (*Id.*) Customer Lynn Horrocks was sitting in one of the massage rooms. (*Id.*) He told McCall that he had received a happy ending from Li Jiang the evening before. (*Id.*) Today, he had asked for Lu; he had not yet had the opportunity to discuss a happy ending with her. (*Id.*)

McCall next recounted an interview Sanchez conducted of Li Jiang on October 30, 2012. (*Id.*) Li Jiang explained that she signed a contract when she began work at Asian Massage stating that she would not perform sexual acts at work. (*Id.*) Nonetheless, she explained, Lu told her that the contract was for the protection of the business and that she should perform sexual acts at her discretion; after all, Asian Massage parlors are known to be sexual in nature, and she needed to "[k]eep the customers happy." (*Id.* at 10-11.) Based on the foregoing information, McCall stated in his affidavit that he believed he would find "evidence of License of Registration Required as well as illegal prostitution and possibly large amounts of cash." (*Id.*)

That same day—October 30, 2012—SET received a search warrant to search Asian Massage and Lu's 2011 gray Mazda for "Condoms, Lubricant, Ledgers, books, or documentation of prostitution transactions[;] [i]nstruction manuals from the Chinese language to English describing sexual acts[;] [and] [l]arge amounts of cash from the earnings of prostitution." (Doc. 43 Ex. 1.)

### 2. *Probable Cause to Search for Evidence of Prostitution*

I now address whether the SET had probable cause to search for evidence of prostitution in the business and vehicle. McCall, who signed the affidavit, had two encounters with employees at Asian Massage that appear to have dealt with masturbation. (Doc. 43 Ex. 1 at 7, 9.) Furthermore, Sanchez had an encounter with an employee who appeared to agree to a hand job for $60. (*Id.* at 10.) While Sanchez did not sign the affidavit, McCall could rely on this hearsay in his affidavit because "[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *United States v. Ventresca*, 380 U.S. 102, 111 (1965).

In addition, I must consider the trustworthiness of Horrocks's discussion of the happy ending he received from Li Jiang. (*See* Doc. 43 Ex. 1 at 10.) Informants are evaluated on their veracity, reliability, and basis of knowledge to determine whether probable cause exists for a search. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). Veracity deals with whether the informant is likely telling the truth; whether the informant is facing criminal charges, for example, impacts an evaluation of veracity. *United States v. Quezada-Enriquez*, 567 F.3d 1228, 1233 (10th Cir. 2009) (citations omitted). Reliability refers to whether the informant has provided correct information in the past. *Id.* (citation omitted). Finally, basis of knowledge pertains to how an informant came upon information; firsthand observations receive greater weight than hearsay. *Id.* (citation omitted). These three factors are evaluated together pursuant to the totality of the circumstances; one stronger prong can make up for a weaker one. *Gates*, 462 U.S. at 238. Horrocks was merely a traveler passing through town, and there is no indication that he was facing any criminal charges. (*See* Doc. 43 Ex. 1 at 10.) While nothing is known regarding his reliability, his basis of knowledge is sound: firsthand experience of a sexual act performed at Asian Massage. (*Id.*)

Lu counters this evidence by providing exhibits containing legitimate online advertising for the provision of massage services. (Doc. 32 Exs. X-Y.) Lu also includes affidavits that attest to the legal nature of her services. (*See* Doc. 32 Exs. A-B.) She states that "[r]egardless of . . . what anyone posted on the internet, defendants interviewed other witnesses who provided the opposite information" that Lu's business did not involve prostitution. (Doc. 32 at 5.)

Nonetheless, the question before me is not whether there is evidence that Asian Massage was a legitimate business. Rather, I must evaluate the affidavit as a whole for probable cause. *United States v. Campbell*, 603 F.3d 1218, 1235 (10th Cir. 2010). Taking into account McCall and Sanchez's experiences posing as customers at Asian Massage and the interview of Horrocks,

which provided reasonably trustworthy information with a sound basis of knowledge, I find that the affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *See Malley*, 475 U.S. at 344 (internal citation omitted). Therefore, the SET defendants are entitled to qualified immunity with respect to Fourth Amendment claims arising from their search of the business and vehicle for evidence of prostitution.

### 3.   *Probable Cause to Search for Evidence of Lack of License or Registration*

I next address whether there was probable cause to search the business and vehicle for lack of a massage license or registration. McCall's affidavit indicates that SET officers wanted to search for "Evidence of License or registration required, such as: Lack of a license to provide massage therapy for compensation, books or ledgers confirming that massages took place at the business." (Doc. 43 Ex. 1 at 5; *see* N.M. STAT. ANN. § 61-12C-5.) However, the search warrant itself only explicitly orders a search for evidence of prostitution, not evidence of license or registration required. (*See* Doc. 43 Ex. 1 at 3.) Nonetheless, a defective warrant can be cured by an accompanying affidavit if the affidavit and warrant are "physically connected so that they constitute one document" and the warrant expressly refers to and incorporates the affidavit "using suitable words of reference." *United States v. Leary*, 846 F.2d 592, 603 (10th Cir. 1988); *United States v. Williamson*, 1 F.3d 1134, 1136 n.1 (10th Cir. 1993) (quotations omitted); *see also Groh v. Ramirez*, 540 U.S. 551, 557-58 (2004). In this case, the search warrant was attached to the affidavit and expressly incorporated it as "a part of this Warrant." (Doc. 43 Ex. 1 at 3.) Thus, any deficiency in the warrant on this basis is cured, and the SET defendants were entitled to search for evidence of "License or registration required" pursuant to the warrant.

However, Lu states that the SET defendants in fact knew that she was a licensed massage therapist in the State of New Mexico. (Doc 32 at 8.) Lu provides a copy of a fax from the City of

Farmington Clerk to Devin Verlhurst, San Juan County Sheriff's Department, on September 10, 2012, with confirmation from the New Mexico Regulation and Licensing Department that Lu's massage license was valid through October 31, 2012. (Doc. 32 Ex. 12; *see also* Doc. 32 at 8.) She also includes a fax of the City of Farmington business license Lu held, which shows an expiration date of December 31, 2012. (Doc. 32 Ex. 13.) Lu claims that the SET defendants received this document on September 10, 2012, as well. (Doc. 32 at 8-9.) She further points to the affidavit attached to the motion for summary judgment, which states that "the SET team knew that plaintiff's business license was due to expire within a month." (Doc. 32 at 9; Doc. 27 at 20.) In fact, it was the massage license, not the business license, that was due to expire the next month. (*See* Doc. 32 Exs. 12-13.) The search warrant affidavit requested a search for the massage license, not the business license (*see* Doc. 43 Ex. 1 at 5), so I must focus on whether the SET defendants knew that Lu did have a valid massage license at the time they applied for the search warrant.

While Devin Verhulst from the San Juan County Sheriff's Office did receive a fax regarding Lu's massage license as evidenced in Defendants' initial disclosures, there is no evidence that the SET officers knew of the information at the time they applied for the warrant. (*See* Doc. 32 Ex. 12; Doc. 32 at 9.) "[E]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Koch v. City of Del City*, 660 F.3d 1228, 1241 (10th Cir. 2011). McCall's affidavit states that there was no massage license posted in a conspicuous place as required by New Mexico law, N.M. STAT. ANN. § 61-12C-11, and this observation could warrant a prudent man to believe that a crime had been committed.

However, Lu claims that the SET defendants knew that she was a licensed massage therapist in the state of New Mexico. (Doc. 32 at 8.) With respect to a qualified immunity analysis, it is a clearly established violation of a defendant's Fourth and Fourteenth Amendment rights for officers to knowingly or recklessly omit information in an affidavit that would negate probable cause. *Stewart v. Donges*, 915 F.2d 572, 582-83 (10th Cir. 1990). When information is omitted from an affidavit, a judge must examine the affidavit as if the information were included and determine whether probable cause would have still existed for a warrant. *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) (citation omitted). In *Stewart*, for example, petitioner brought a § 1983 action against his arresting officer, stating that he knowingly or recklessly omitted from his arrest affidavit the fact that his accuser had recanted his statement. *Stewart*, 915 F.2d at 582-83. Yet the parties' summary judgment briefs disputed whether the arresting officer was informed of the recantation, and the court therefore found that there was a genuine issue of material fact, precluding summary judgment. *Id.* at 583. I find this case to be analogous in that a genuine issue of material fact remains as to whether the SET officers knew that Lu in fact had a valid massage license. *See* FED. R. CIV. P. 56(a). I therefore deny summary judgment with respect to Lu's claims arising from the search of the business for evidence of lack of a license or registration.

B.  Search Warrant for Home

After searching the business and vehicle on October 30, 2012, SET officers then searched Lu's home. (Doc. 1 at 15.) Absent exigent circumstances, police may not enter a home without a warrant. *Payton v. New York*, 445 U.S. 573, 590 (1980). "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Id.* at 586.

14

Defendants originally failed to attach search warrants and search warrant affidavits to their motion for summary judgment. (*See* Doc. 27.) I ordered Defendants to file an addendum to the motion for summary judgment to include "the affidavits they submitted concerning Wei Lu and the warrants authorizing her arrest and search of her business, home and vehicle that were approved by the state judge." (Doc. 42). With respect to the search warrants and affidavits, Defendants included all documents except the search warrant for the home. (*See* Doc. 43.) I then gave Defendants a final opportunity to file all documents by ordering a second addendum to the motion for summary judgment. (Doc. 44.) Defendants' Second Addendum to Motion for Summary Judgment also failed to include a copy of the search warrant for the home. (*See* Doc. 45.) Included in the second addendum is an affidavit from McCall, who states that the first page of the search warrant for the home—containing all but the state judge's signature—became jammed in the state judge's fax machine. (Doc. 45 Ex. 5.) McCall explains that he attached the first page of the warrant he sent to the state judge to the page with the judge's signature as a result of the paper jam. (*Id.*) While this might be an acceptable substitution if this first page corresponded with the affidavit for the search of the home, the copy filed with the Court does not match. The caption lists the massage business and vehicle as the properties to be searched, not the home. (Doc. 45 Ex. 4.) There is no warrant number anywhere to show that the search warrant and affidavit relate to one another. (*See id.*) Further, while the first page lists items to be searched for that match those listed in the affidavit for search of the home, the items also match those listed on the search warrant for the business and vehicle. (*See id*; Doc. 43 Ex. 1.)

The SET defendants argue that they are entitled to summary judgment because they had a search warrant to search the home based on probable cause derived from a "comprehensive and extensive investigation." (Doc. 27 at 12.) Lu responds that there are many disputed material facts

15

in this case, that Defendants do not admit their mistakes, and that they "re-characterize" facts to fit their own purposes. (Doc. 32 at 1.) Regardless of how the facts are characterized, exigent circumstances are not apparent in this case, so a warrant was therefore required to search the home. While records may later surface indicating that there was a warrant for the search of the home, at the summary judgment stage, Defendants have failed to produce any warrant. Therefore, I deny summary judgment with respect to all claims arising from the search of the home on October 31, 2012.

  C. <u>Search Warrant for Computers, USB Drive, and DVR</u>

  During the SET defendants' search of Asian Massage and the home, they seized items including "plaintiff's money, computers, business ledgers and other personal belongings." (Doc. 1 at 15.) On November 13, 2012, Sanchez submitted an affidavit for a search warrant to search two laptop computers, a USB portable hard drive, and a Digital Video Recorder ("DVR"). (Doc. 43 Ex. 2 at 24.) Sanchez's affidavit refers to searches of the business, vehicle, and home at the end of October 2012 and specifically refers to the search warrant and affidavit for the business and vehicle and the search warrant for the home. (*Id.*) The two laptop computers and the DVR were seized in the search of the business and vehicle (*Id.* at 25), while the USB drive was seized during the search of the home (*Id.*) I must determine whether the warrant application was objectively unreasonable. *See Malley*, 475 U.S. at 344.

  I first address whether there was probable cause to search the two laptop computers and the DVR, all items found at the business. Sanchez's affidavit refers to the search warrant and the affidavit for search warrant for the business and vehicle. (Doc. 43 Ex. 2 at 24.) The affidavit also lists the other items found at the business, including "several ledgers and financial documents, as well as $5348 in cash." (*Id.* at 25.) Sanchez stated that he believed video recordings of sexual

acts may be on the DVR because of the angle of the video cameras. (*Id.*) He also supported his affidavit by pointing out that both he and McCall had been "solicited" by employees at Asian Massage. (*Id.* at 26.)

As noted earlier, the SET defendants are entitled to qualified immunity for the search of the business and vehicle for evidence of prostitution, as the search warrant affidavit was not lacking in indicia of probable cause. Therefore, Sanchez's references to the search warrant and affidavit for the business and vehicle search support the instant affidavit for search warrant. I find that the information in the business and vehicle search warrant and affidavit, together with the $5,348 in cash found at the business, could cause an officer to reasonably believe that electronic devices found at the business would have evidence of prostitution. Thus, I find that the SET defendants are entitled to qualified immunity with respect to Fourth Amendment claims relating to the search and seizure of the two laptop computers and the DVR.

I now address whether there was probable cause to search the USB drive found at the home. The affidavit for search warrant for the electronic devices references a search warrant for the search of the home (*Id.* at 24), but as I discussed, the SET defendants have failed to show that a search warrant did in fact exist. Further, the affidavit describes items found at the home, such as copies of erotic review website pages, to support Sanchez's belief that evidence of prostitution would be found on the USB drive. (*Id.* at 25-26.) I must decide whether evidence gathered in the search that lacks a verified search warrant can constitute probable cause for the purposes of qualified immunity at the summary judgment stage.

A reviewing court may ignore tainted information in an affidavit and determine whether adequate untainted facts persist for a magistrate judge to have found probable cause. *See United States v. Karo*, 468 U.S. 705, 719 (1984); *United States v. Cusumano*, 83 F.3d 1247, 1250 (10th

Cir. 1996); *United States v. Kelley*, 6 F. Supp. 2d 1168, 1177-78 (D. Kan. 1998). That is, "[a]n affidavit containing erroneous or unconstitutionally obtained information invalidates a warrant if that information was critical to establishing probable cause. If, however, the affidavit contained sufficient accurate or untainted evidence, the warrant is nevertheless valid." *United States v. Christy*, 785 F. Supp. 2d 1004, 1051 (D.N.M. 2011) (quoting *United States v. Snow*, 919 F.2d 1458, 1460 (10th Cir. 1990)).

Upon review of the affidavit of search warrant for the electronic devices, I find that the only evidence upon which the affidavit is based is an unverified search warrant and items found in the home based on the search supposedly founded on the unverified search warrant. Sufficient "untainted" facts do not exist for me to find that probable cause existed to search the USB drive. Therefore, as with the initial search of the home, I find that the SET defendants are not entitled to qualified immunity with respect to the search of the USB drive.

D. Arrest Warrant for Wei Lu

The SET defendants arrested Lu on or about October 30, 2012. (Doc. 1 at 14.) She was later charged with providing massage therapy without a license or registration, N.M. STAT. ANN. § 61-12C-5, and failing to display a massage license or registration, N.M. STAT. ANN. § 61-12C-11; (*see* Doc. 32 Ex. 10). Both crimes are misdemeanors. *See* N.M. STAT. ANN. § 61-12C-27. While Defendants include an arrest warrant and supporting affidavit for Lu's employee Li Jiang in their Addendum to Motion for Summary Judgment, they do not include a warrant or affidavit for Lu's arrest or an explanation regarding whether such an arrest warrant exists. (*See* Doc. 43 Ex. 3.) Therefore, I must determine whether the SET defendants could arrest Lu without a warrant. I address Lu's arrest with respect to both her § 1983 Fourth Amendment claim and her state false arrest claim. (*See* Doc. 1 at 16-17.)

Police may arrest someone whom an officer has probable cause to believe has committed a misdemeanor in his presence. *See, e.g.*, *Virginia v. Moore*, 553 U.S 164, 171 (2008) (citations omitted); *State v. Ochoa*, 182 P.3d 130, 134 (N.M. 2008) (citing Cave *v. Cooley*, 152 P.2d 886, 888-89 (N.M. 1944)). "A crime is committed in the presence of an officer when the facts and circumstances occurring within his observation, in connection with what, under the circumstances, may be considered as common knowledge, give him probable cause to believe or reasonable grounds to suspect that such is the case." *Ochoa*, 182 P.3d at 888.

I previously found that summary judgment should be denied with respect to the search for lack of a massage license or registration, and the SET defendants do not claim to have observed actual prostitution at Asian Massage. The remaining offense for which Lu might legally have been arrested was for failing to display a license or registration. N.M. STAT. ANN. § 61-12C-11. This statute requires that "[a] massage therapy license or registration issued by the board shall at all times be posted in a conspicuous place in the holder's principal place of business." *Id.* McCall previously stated in his affidavit for search warrant of the business and vehicle that he did not see a massage license posted anywhere. (Doc. 43 Ex. 1 at 8.) During the search of the business, if the SET defendants had not seen a massage license posted in a conspicuous place, then they could have arrested Lu for this misdemeanor occurring in their presence, regardless of whether the search warrant for the business and vehicle authorized a search for evidence of violations of the statutory provision requiring the display of a license or registration. (*See* Doc. 43 Ex. 1.) As long as an officer can arrest a person for one charge, it is of no consequence whether there is probable cause for other offenses. *See Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006). "When a warrantless arrest is the subject of a § 1983 action, the officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to

make the arrest." *Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1191 (10th Cir. 2007). Because no massage license was displayed in a conspicuous place in the presence of the SET defendants, I find that it was objectively reasonable for the SET defendants to have believed that there was probable cause to arrest Lu, and they are entitled to qualified immunity with respect to Fourth Amendment claims pursuant to the arrest.

I now address the SET defendants' potential liability for false arrest under state law. According to the New Mexico Supreme Court, "An officer who has probable cause to arrest a person cannot be held liable for false arrest or imprisonment, since probable cause provides him with the necessary authority to carry out the arrest." *Santillo v. N.M. Dep't of Pub. Safety*, 173 P.3d 6, 12 (N.M. Ct. App. 2007); *see also State v. Johnson*, 930 P.2d 1148 (N.M. 1996). As I have found that the SET defendants had probable cause to arrest Lu for failing to display a license or registration, I find that Defendants are immune from Lu's false arrest claim.

## II.   Whether Defendants Are Entitled to Summary Judgment as to Lu's Claims of Racial Discrimination

Lu claims that "Defendants intentionally conspired to discriminate against plaintiff based on her Asian heritage and specifically targeted her because of her Asian heritage and business." (Doc. 1 at 17.) She alleges violations of her equal protection and due process rights under the United States and New Mexico constitutions. (*Id.* at 17-18.) Defendants argue that they are entitled to qualified immunity with respect to Lu's racial discrimination claims in addition to her Fourth Amendment claims discussed in the previous section, "because plaintiff cannot show she was arrested due to her national origin in violation of her Constitutional rights." (Doc. 27 at 11.) As a preliminary matter, "claims asserting selective enforcement of a law on the basis of race are properly brought under the Equal Protection Clause, and . . . the right to equal protection may be violated even if the actions of the police are acceptable under the Fourth Amendment." *Marshall*,

20

345 F.3d at 1166 (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)). Defendants explicitly address Lu's equal protection claims but do not address due process rights potentially violated by racial discrimination. (*See* Doc. 27 at 13-15.)

With respect to the first prong of the qualified immunity analysis, to establish a selective-enforcement equal protection violation, "a plaintiff in a § 1983 suit challenging alleged racial discrimination . . . must present evidence from which a jury could reasonably infer that the law enforcement officials involved were motivated by a discriminatory purpose and their actions had a discriminatory effect." *Id.* at 1168. Such a standard is "a demanding one," as "[j]udicial interference with law-enforcement discretion might induce police officers to protect themselves against false accusations in ways that are counterproductive to fair and effective enforcement of the laws." *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006) (quotations omitted). A plaintiff must demonstrate "some evidence" of both a discriminatory effect and discriminatory intent. *Id.* (citation omitted). Evidence may include "an overtly discriminatory policy," "direct evidence of police motivation," "statistical comparisons" of the ratio of a minority group arrested for a particular crime to their fraction of the total population, and direct evidence of behavior. *Marshall*, 345 F.3d at 1168. In order to specifically establish a discriminatory effect, "the claimant must show that similarly situated individuals of a different race were not prosecuted." *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (citing *Ah Sin v. Wittman*, 198 U.S. 500 (1905)).

Defendants argue that Lu "offers no specific or clear evidence" of racial discrimination and that Lu's allegations are based on language, hand gestures, and slang used by Defendants to communicate with Lu and her employees and on general claims that she was targeted due to her Asian heritage. (Doc. 27 at 14.) I agree that Lu provides little evidence to meet the demanding

standard required to oppose summary judgment on selective-enforcement claims. In her complaint, Lu states, "On information and belief, no such surveillance or targeting of any non-Asian message therapist . . . has been the subject of SET's special operations in San Juan County, nor have there been any other like prosecutions in San Juan County courts." (Doc. 1 at 12.) Yet Lu provides no statistical evidence comparing the number of arrests at Asian-owned versus non-Asian-owned massage businesses. The only evidence provided in this case regarding other massage businesses in Farmington, New Mexico, is that there is another massage parlor several blocks away from Asian Massage, also owned by an Asian. (Doc. 27 at 4; Doc. 32 at 4.) There are no indications that the other Asian-owned massage business has been targeted by police. Further, Lu has provided no concrete evidence to support the claim that no non-Asian massage businesses have been subject to an investigation such as the one in the instant case.

Lu's complaint also suggests that Sanchez's use of the word "massagee" could "possibly be a racially-derived stereotype of a Chinese accent." (*Id.* at 13.) Hypothesizing over the possible intent behind the pronunciation of a word cannot meet the demanding standard Lu must achieve to oppose summary judgment. Aside from these factual allegations, the only other allegations of discrimination are claims that Defendants' actions were based on Lu's national origin and that Defendants "conspired to discriminate" against her. (Doc. 1 at 16-17.) I agree with Defendants that these conclusory allegations (*see* Doc. 27 at 14), by themselves, fail to satisfy the first prong of the qualified immunity analysis requiring sufficient evidence to allow a jury to reasonably infer that Defendants—including the SET defendants, Christensen, and San Juan County—were motivated by a discriminatory purpose and that their actions had a discriminatory effect. Likewise, Lu has provided no evidence of a conspiracy to discriminate against her based on her

Asian heritage and thereby violate her equal protection rights. I therefore grant summary judgment with respect to Lu's § 1983 and § 1985 equal protection claims.

### III.   Whether Sheriff Christensen is Subject to Supervisory Liability in his Individual Capacity

A defendant who is sued in an individual capacity pursuant to § 1983 may be subject to supervisory liability if he or she is in a supervisory role. *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). *Respondeat superior* liability does not apply to supervisors in § 1983 cases; however a supervisor can be held liable when a plaintiff shows that the supervisor did all of following: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained constitutional harm, and (3) acted with the state of mind required to established the alleged constitutional deprivation." *Id.* at 1164 (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)). Even if Christensen had a "requisite causal connection" to constitutional violations, Lu has not alleged that Christensen imposed any policy on the SET team that would result in the violation of her constitutional rights. (*See* Doc. 1.) In determining that Lu has failed to meet the first prong of the test, even with the facts construed in the light most favorable to her, I find that Christensen does not face supervisory liability in his individual capacity.

### IV.   Liability of San Juan County

I now address whether San Juan County may be held liable for the acts of the SET officers or Christensen in their official capacities. As argued by Defendants, "Neither *Monell* . . . , nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (citing *Monell*, 436 U.S. at 658 (1978)). Further, even where government employees violate constitutional

23

rights, local governments may be held liable under § 1983 only if the government employees' actions were precipitated by a local government policy or custom. *See Monell*, 436 U.S. at 690-91. Lu has neither alleged in her complaint (Doc. 1) nor argued in her response (Doc. 32) that any San Juan County policy or custom led to the alleged violations. Therefore, I find that San Juan County is entitled to summary judgment as to all Fourth and Fourteenth Amendment claims alleged by Lu.

## V.       Injunctive Relief for Conversion/Replevin

The remaining claim is for the return of Lu's personal items and money. (Doc. 1 at 16.) Defendants do not directly address the return of the property in their motion for summary judgment, but rather state that they are entitled to qualified immunity for the seizure of the property because there was probable cause to arrest Lu and seize associated evidence. (*See* Doc. 27 at 11-13.) Nonetheless, Lu correctly argues that her conversion/replevin claim is not subject to qualified immunity. (Doc. 32 at 4.) The qualified immunity defense only applies to damages, not to injunctive relief. *Cannon v. City & Cnty. of Denver*, 998 F.2d 867, 876 (10th Cir. 1993). Furthermore, Defendants do not provide affirmative evidence negating an essential element of Lu's claim or show that Lu's evidence is insufficient to demonstrate an essential element of her claim. *See Celotex*, 477 U.S. at 331. I therefore deny summary judgment with respect to Lu's claims of conversion/replevin.

### CONCLUSION

In sum, I find that:

1) the SET defendants are entitled to qualified immunity with respect to the search of the business and vehicle for evidence of prostitution, the two laptops and the DVR, and the arrest of Lu;

2)  the SET defendants are not entitled to qualified immunity with regard to the search of the business for lack of a license or registration, the home, and the USB drive;

3)   the SET defendants are entitled to summary judgment as to Lu's equal protection claims;

4)  San Juan County is entitled to summary judgment with respect to Lu's Fourth and Fourteenth Amendment claims;

5)  Christensen is not liable in his individual capacity as a supervisor; and

6)  Defendants are not entitled to summary judgment on the claim of conversion/replevin.

I do not consider whether the SET defendants are entitled to summary judgment on Lu's due process claims under §§ 1983 and 1985. Although the SET defendants state that they established in their qualified immunity argument that they "did have probable cause to search and seize plaintiff and her property and, therefore, plaintiff's claims related to due process . . . must fail" (Doc. 27 at 13-14), they did not brief this argument (*see id.* at 9-13).

Defendants' Motion for Summary Judgment is therefore GRANTED with respect to the searches of the business and vehicle for evidence of prostitution, laptops, and DVR; the arrest of Lu; the equal protection claims; supervisory liability of Christensen; and Fourth and Fourteenth Amendment liability of San Juan County. The motion is DENIED as to the searches of the business for lack of license or registration, the home, and the USB drive; and the claim of conversion/replevin.

IT IS SO ORDERED.

William P. Lynch
United States Magistrate Judge