UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

WEI LU,

     Plaintiff,

vs.                          No. 1:13-CV-00531 WPL/ACT

KEN CHRISTESEN, Individually and in his official
capacity as San Juan County Sheriff,
SAN JUAN COUNTY SHERIFF'S OFFICE,
ALAN JAMISON, Individually and in his official capacity,
JACOB SANCHEZ, Individually and in his official capacity,
DAVID McCALL, Individually and in his official capacity,

     Defendants.

### DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants Alan Jamison, Jacob Sanchez and David McCall, by and through their attorneys, Potts & Associates (Amy L. Glasser, Esq.), and hereby submit Defendants' Second Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. Plaintiff opposes this Motion.

### INTRODUCTION

Plaintiff Wei Lu filed a Complaint in which she alleged that defendants falsely arrested her, wrongfully took her personal belongings and money during the arrest, and violated her Federal and State Constitutional rights under 42 USC §§ 1983 and 1985. Plaintiff alleged that the defendants deprived her of equal protection, due process, and violated her Fourth Amendment right to be free from unreasonable search and seizure, all of which plaintiff claims occurred because she is Asian.

On September 13, 2013, defendants filed their first Motion for Summary Judgment [Doc. 28]. After extensive briefing, the Court issued its Memorandum Opinion and Order [Doc. 46], granting in part and denying in part defendants'

Motion. Defendants now file this Second Motion for Summary Judgment as to the search of the plaintiff's residence and USB drive on the basis that defendants are now able to offer additional evidence for the Court's consideration.

For purposes of efficiency and to avoid any unnecessary or repetitious argument, defendants respectfully request that the Court refer to and incorporate the case law and arguments offered in the briefing on defendants' first Motion for Summary Judgment. In support of their Second Motion for Summary Judgment regarding the search of plaintiff's home, defendants offer the following.

## LEGAL ARGUMENT

I. **Defendants Are Entitled to Qualified Immunity As They Had a Valid Warrant to Search Plaintiff's Residence and Evidence Seized at the Residence.**

Qualified immunity is broad and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). To determine if qualified immunity applies, this Court must look to whether a reasonable officer could have believed his or her conduct to be lawful in light of the clearly established law and the information possessed by the officer at the time the conduct occurred. Anderson v. Creighton, 483 U.S. 635, 641 (1987).

In its Memorandum Opinion and Order, the Court addressed the search of plaintiff's home and noted that, absent exigent circumstances, police may not enter a home without a warrant. Because defendants were unable to offer the Court a complete copy of the Search Warrant for the home and no exigent circumstances existed to permit search of the home without a warrant, the

2

Court denied the Motion for Summary Judgment as to the search of the residence. As part of the briefing, defendants argued that they did have a Search Warrant for the residence but that the first page of the Search Warrant signed by the District Court Judge became jammed in the fax machine and, therefore, was not filed with the District Court following the search. Unfortunately, the documents available to defendants that were subsequently presented to the Court failed to clarify or sufficiently evidence that defendants did, in fact, have a verified Search Warrant for the home. This Court stated that "[w]hile records may later surface indicating that there was a warrant for the search of the home, at the summary judgment stage, Defendants have failed to produce any warrant." On that basis, this Court denied summary judgment with respect to claims arising from the search of the home.

Following the Court's ruling, defendants continued their efforts to sufficiently establish for the Court that they did have a Search Warrant for the home. Defendants now present an Affidavit of the Honorable Sandra A. Price for the Court's consideration. *See Exhibit "A" attached hereto.* Judge Price attests and affirms under oath that she did receive Affidavits for Search Warrants for plaintiff's residence , business and vehicle. Judge Price further attests and affirms that she issued Search Warrants for the business, vehicle and residence and that the Search Warrants she issued were consistent with the Affidavits. Judge Price also affirms that the evidence seized during the searches was consistent with the Search Warrants she issued, including and specifically in regard to the plaintiff's residence.

On the basis that Judge Price has confirmed that she did issue a Search Warrant for the plaintiff's residence, based on an Affidavit that established

3

probable cause, and that the evidence seized at the residence was consistent with and permitted by the Search Warrant, defendants move for dismissal of all claims arising from the search of the home.

In the Memorandum Opinion and Order, the Court also denied summary judgment as to the search of the USB drive which was seized during the search of the plaintiff's home. The Court held that the Affidavit to search the electronic devices was based on the "unverified search warrant" and, therefore, the defendants were not entitled to qualified immunity in regard to the search of the USB drive. Having established through Judge Price's Affidavit that defendants did have a valid and verified Search Warrant for plaintiff's home, the basis for the denial of summary judgment as to the search of the USB drive is negated. Therefore, defendants move for dismissal based on qualified immunity as to the search of the USB drive.

As defendants did have probable cause and a verified Search Warrant and, under the applicable objective standard, a prudent officer would believe that probable cause had been established by the totality of the investigation, defendants are entitled to qualified immunity. *United States v. Bernard*, 51 f.3d 1531, 1536 (10th Cir. 1995).

WHEREFORE, Defendants Sanchez, McCall, and Jamison respectfully move for summary judgment and dismissal of the claims arising from the search of the residence and USB drive and for such further relief deemed just under the circumstances.

Respectfully submitted:

POTTS & ASSOCIATES

"Electronically filed"

4

By:  */s/Amy L. Glasser*
AMY L. GLASSER
6001 Indian School Rd. NE #100
Albuquerque, NM  87110
Telephone: 505-889-5252
Facsimile:  877-365-8043
*Attorney for Defendants*

I HEREBY CERTIFY that on January 28, 2014,
I filed the foregoing pleading electronically through
the CM/ECF system, which caused the following
parties or counsel of record to be served by electronic or other
means, as more fully reflected on the Notice of Electronic Filing:

Christian Hatfield, Esq.
Tucker, Burns, Yoder & Hatfield
105 N. Orchard Ave.
Farmington, NM  87401
christian@tbylaw.com

   */s/ Amy L. Glasser*
AMY L. GLASSER

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

WEI LU,

     Plaintiff,

vs.                            No. 1:13-CV-00531 WPL/ACT

KEN CHRISTESEN, Individually and in his official
capacity as San Juan County Sheriff,
SAN JUAN COUNTY SHERIFF'S OFFICE,
ALAN JAMISON, Individually and in his official capacity,
JACOB SANCHEZ, Individually and in his official capacity,
DAVID McCALL, Individually and in his official capacity,

     Defendants.

## AFFIDAVIT OF THE HONORABLE SANDRA A. PRICE

I, Sandra A. Price, affirm that I am over the age of eighteen, am competent to make this affidavit, and do so based on my personal knowledge.

1.     I am Sandra A. Price, District Judge in the 11th Judicial District, State of New Mexico.

2.     I am not a party to this matter.

3.     In October, 2012, I became aware of an investigation by the San Juan County Sheriff's Department of Wei Lu and the business known as Asian Massage, located in Farmington, NM.

4.     On October 30, 2012, I received from Deputy Dave McCall two Affidavits for Search Warrant. One Affidavit was in regard to issuance of a Search Warrant for the business known as Asian Massage, owned by Wei Lu and for the vehicle also owned by Wei Lu. The other Affidavit was in regard to the issuance of a Search Warrant for the residence of Wei Lu located at 510 Wall Street, Apt. A 8, Farmington, NM.



EXHIBIT A

5.     The Affidavits for Search Warrants that I reviewed are attached to this,
my Affidavit, as Exhibit "1".

6.     I personally reviewed the Affidavits submitted by Detective McCall, along
with the Search Warrants, and determined that probable cause did exist and
therefore, I issued both Search Warrants and returned them to Detective McCall via
facsimile. The Search Warrants signed by me are attached as Exhibit "2".

7.     While faxing the Search Warrants back to Detective McCall, I experienced
some technical difficulty.   In regard to the Search Warrant related to the residence,
only my signature page was transmitted.  The first page of the Search Warrant for the
residence did not contain any notations, changes, instructions, or comments by me
and, therefore, I considered Detective McCall and his team to have received an
executed and fully valid Search Warrant of the residence.

8.     I have reviewed the Search Warrant Inventory Sheet completed on
October 31, 2012 by Detective McCall and confirm that the items seized are consistent
with the Search Warrant issued by me for the search of the residence and that all
items seized were permitted by the Search Warrant, including seizure of the DVR and
computer hard drive.

9.     On November 13, 2012, I received an Affidavit for Search Warrant from
Deputy Sheriff Jacob Sanchez in regard to issuance of Search Warrant regarding items
found and seized at the residence on October 31, 2012, including computers, USB
hard drive and DVR on the basis that these items may contain documentation related
to illegal business activities.

10.    Based on the Affidavit for Search Warrant presented by Deputy Sheriff
Sanchez, I determined that there was probable cause and that grounds existed for the
issuance of the Search Warrant and I did issue the Search Warrant on November 13,

2012. Deputy Sanchez's Affidavit and the Search Warrant issued by me are attached as Exhibit "3".

11.     While I do not know why the first page of the Search Warrant related to the search of the residence issued by me on October 30, 2012 was not filed with the Court, I can and do attest and affirm that I did issue a valid Search Warrant, consistent with the language presented in the Affidavit for Search Warrant by Detective McCall, and that the Search Warrant Inventory Sheet that was filed with the Court following the search of the residence located at 510 N. Wall #8, Farmington, NM does identify items that were subject to the Search Warrant.

FURTHER AFFIANT SAYETH NOT.

THE HONORABLE SANDRA A. PRICE
DISTRICT COURT JUDGE

Subscribed and sworn to or declared and
Affirmed to before me in San Juan County,
State of New Mexico, this 28th day of
January, 2014.

Judge, Notary, or Other Officer
Authorized to Administer Oaths

EXHIBIT

DISTRICT COURT *25*
SAN JUAN COUNTY NM
FILED

IN THE DISTRICT COURT
COUNTY OF SAN JUAN
STATE OF NEW MEXICO

2012 NOV -2  AM 11: 47

STATE OF NEW MEXICO,
     Plaintiff,

vs.

No. D-1116-SW-201271⁴

203 S. Orchard, Farmington, NM
     Defendant.

2011 Gray Mazda bearing NM license number 426RHG (VIN # JM1BL1U62B1482505)

Defendant.

## AFFIDAVIT FOR SEARCH WARRANT

Affiant, being duly sworn upon his oath, states that I have reason to believe that in the following described business:

Asian Massage, 203 S. Orchard, Farmington, NM.

The building is a red brick building with two doors facing S. Orchard Ave. It has a red and white painted sign above the doors with the name of the business printed in block letters (Asian Massage). The front door faces to the east, and there is no back door.

A gray 2011 Mazda bearing NM license number 426RHG (VIN # JM1BL1U62B1482505) is parked in the back parking lot. It was driven to the business by Wei Lu, the owner of Asian Massage.

Items that are sought at 203 S. Orchard or in the 2011 Mazda bearing NM license number 426 RHG include:

Evidence of License or registration required, such as:

Lack of a license to provide massage therapy for compensation, books or ledgers confirming that massages took place at the business

Evidence of prostitution, such as:

Condoms, Lubricant, Ledgers, books, or documentation of prostitution transactions.
Instruction manuals from the Chinese language to English describing sexual acts.
Large amounts of cash from the earnings of prostitution.

The facts tending to establish the foregoing grounds for issuance of this Search Warrant are as follows.

I am Dave McCall, a full-time, commissioned, salaried, and licensed police officer for the State of New Mexico, presently working as a Deputy for the San Juan County Sheriff's Office, assigned to the Special Enforcement Team. I have been a peace officer for approximately three years and have received training in and have experience investigating a range of felony crimes. I am the affiant herein. I learned the following facts from the sources noted and the investigation described.

In August of 2012, the San Juan County Special Enforcement Team (SET) received information that the Asian Massage parlor directly south of KB Dillon's restaurant in Farmington was possibly a house of prostitution.
The SET team set up a prolonged surveillance operation on the Asian Massage parlor to gather information on the clientele that frequented the establishment. As a result of the surveillance, the SET team was able to establish that the clientele for the Asian Massage parlor consisted entirely of male subjects.

The SET team learned that the business was owned by an Asian female named Wei Lu. Wei Lu also is listed as leasing apartment #8 in an apartment complex at 510 Wall St. in Farmington. Her vehicle, a 2011 Mazda bearing NM license number 426RHG has been seen at the Asian Massage parlor and the apartment at 510 Wall St.

Two Asian women who perform massages at Asian Massage have been identified as Li Jiang (d.o.b. of 08/08/1977) and Xiang Yu Xie (d.o.b. of 04/01/1955). Both women reside in Apartment #8 at 510 Wall Street. Neither of the women has reported an income in 2012.

Both women have been observed numerous times walking from 510 Wall St. #8 to the Asian Massage parlor before work. They have also been observed walking home from the Asian Massage parlor to 510 Wall after work. Neither woman has been observed walking to or from any other business or residence in Farmington during the surveillance.

On September 04, 2012, a silver / gray Mazda passenger car bearing NM license plate number 426RHG was seen parked in front of the Asian Massage parlor. An unidentified female entered the vehicle and drove to Wal Mart West in Farmington, where she purchased supplies with a credit or debit card, and then returned to Asian Massage at 203 S. Orchard, where the unidentified Asian female unloaded the supplies. The female then entered the Mazda and drove to 510 Wall Street in Farmington.

On September 06, 2012, Deputy Sanchez and I attempted to gather information on the Asian

Massage parlor at 203 S. Orchard in Farmington.

At 1717 hours Deputy Sanchez and I entered the establishment in an attempt to procure massages. Upon entering the front door, we were met by an Asian woman wearing a pink shirt. She appeared to be approximately 50 years of age, and had medium length black hair. She invited me into another room and we stood next to a massage table. The woman spoke very broken English, and it was difficult to communicate with her.

The woman said that $60 went to the owner of the business, and then she said "I work for you." I did not understand what that meant, and I asked her. She said "I work for you for "Teepo."" I asked her what "Teepo" meant. She put her hand in front of her chest with the fingers of her left hand bent, as if she were grasping a cylindrical object, and pumped her hand up and down in front of her face, saying "Teepo, I work for Teepo." I asked her if she meant that she worked for tips. She said "Yes, Teepo, Tip" while she continued to make the pumping motion. From my training, I know that the pumping motion is meant to convey masturbation.

I told the woman that I only had $60 and did not have enough for a tip. I then asked her if she accepted credit cards, she said that she did not. I told her that I was going to go speak to "my friend" in the lobby.

I went into the lobby and spoke with Deputy Sanchez. We agreed that I would give him my $60, so he would have enough money for a massage and a tip. I then exited the building and joined Sergeant Jamison in his patrol unit and monitored the listening device that Deputy Sanchez had in his pocket. I exited the Asian Massage parlor at 1721 hours.

The woman that I spoke to at Asian Massage was later identified as Xiang Yu Xie.

The following account is a report submitted by Deputy Sanchez for the evening of September 06, 2012:

*On September 6, 2012 Deputy Dave McCall and I went to the Asian Massage Parlor at 203 South Orchard in Farmington in an undercover status. We were both wearing plain clothes and had investigative funds to attempt to get a massage with a "happy ending" which from our investigation was a "hand job". We each had $60 cash (3, $20 bills) and the serial numbers had been photocopied prior to us arriving at the parlor.*

*At approximately 1715 hours we went into the shop and a asian female wearing a pink shirt a black capri style pants greeted us. We advised her we wanted massages and she took McCall back first. The windows are covered with very dark shades and you cannot see out of the parlor while inside or see in while walking up. There were two chairs on the north side of the waiting room with a magazine stand in between them. There were multiple Maxim magazines on the stand and the lighting was low and there was music playing quietly in the background.*

*I sat waiting for approximately 3 or so minutes and McCall and the asian female came back. McCall stated the cost was $60 for the owner and the masseuses worked for tips so he then*

*handed me his money and left the parlor. The female then took me back through a curtain and we turned south (left) down a hallway and passed one room and went to the last room in the hallway. You entered the room through a door and there was a massage table in the middle of the room. There was a hook on the wall as soon as you walked into the room on the right and the asian female told me to put my clothes there and lie down. She then left the room and I got down to my underwear and layed down on my stomach.*

*She then came back into the room and started the massage. She kept asking if my buddy (McCall) was going to the bank and coming back for a period of time and I kept telling her it was probably across town and it would take awhile. She asked multiple times if I liked the massage and would just smirk everytime I said "Yes". She then asked if I was married and I told her yes (was wearing my wedding ring) and she stated I was young. I asked her how old she thought I was and she stated "24". I told her I was 25 and she kept going with the massage.*

*I asked her where she was from and she told me from China and she had been here for four months now. She went to Los Angeles and then came here. I asked her what her name was and she stated "Tina". I remember from an erotic massage web site that one on the masseuses was Tina from the Asian Massage Parlor. She asked what I did and I told her I worked in the oilfield. At the end of the massage she did not solicit anything at this time but she did say for me to come back to her for a "really good time" next time. I then left the parlor after paying the $60 fee and a $20 tip at approximately 1815 hours. I then gave Sgt Jamison the other $40 so it could be put back with the investigative fund.*

On October 10, 2012, at approximately 1935 hours, I entered the Asian Massage parlor at 203 S. Orchard with the intent of gaining probable cause that prostitution is being conducted at the establishment. I went in with a digital wire (a listening device that was being monitored by other San Juan County Sheriff's Office personnel) and an Olympus digital recorder.

I was met at the door by an Asian female who has been identified as Li Jiang. I spent a moment in the lobby / waiting area, looking for a Massage license for the establishment, because in my training I had learned that a Massage license must be displayed in a conspicuous place for customers to examine. I had also learned that the individual employees who perform massages must display a license in a place that was visible from their workspace.

Li Jiang led me into a room that was adjacent to the waiting room and instructed me to remove my clothing and lay on the massage table. She told me that the massage cost $60 for one hour. I pulled a wad of money out of my trousers and peeled $60 off and gave it to her. Li Jiang saw that I still had a considerable amount of cash in the roll of money. She left the room and I removed my outer clothing, leaving my boxer shorts on. As I disrobed, I inspected the massage room, and did not find a massage license for Li Jiang. I arranged my clothing so that the digital wire was in my shirt pocket on top of a chair, and my Olympus digital recording device was in the back pocket of my trousers.

Li Jiang came back into the room and I lay down on the massage table face down. She grabbed the waistband of my boxer shorts and attempted to pull them down. As she tried to remove my

shorts, she said "You take off." I reached back and pulled my underwear back up and told her that I wanted to keep my underwear on. She asked why, and I said "I'm shy." Li Jiang then placed a white towel on my back and began the massage.

Approximately 20 minutes and 30 seconds from the time I began recording (as measured by the timer on the Olympus digital recording device) Li Jiang asked "You want Happy?" I asked "What?" and she repeated "You want Happy?" I asked "Happy ending?" At this point Li Jiang made a stroking motion with her left hand. I know from training and experience that this motion was meant to mean that she wanted to manually stimulate my genitals. I recognized the masturbation of another as a sexual act as defined in the statute for prostitution. I asked her "You would do that?" and she nodded in the affirmative and put her finger to her lips to motion me to be quiet. She leaned close to my ear and said "For you." I asked her how much that cost, and she did not reply. I asked "Do you do that for a tip?" She giggled and said "Yes."

The massage continued while I was lying on my stomach. After a time, I mentioned the pre-arranged word, and Sgt. Jamison sent me a text message. I told Li Jiang that the message was from my boss, and there was an emergency at work, and I would have to leave immediately. Li Jiang told me that she would give me $20 back because I had not been massaged for the entire hour. I told her to keep the money as a tip.

Li Jiang exited the massage room and I put my outer clothing back on. She gave me a bottle of water and I exited the Asian Massage parlor.

The following account is a report submitted by Deputy Sanchez from October 10, 2012:

*On October 10, 2012 at approximately 1900 hours I entered the Asian Massage Parlor at 203 S Orchard in Farmington attempting to solicit prostitution from the older female by the name of Xiang Yu Xie. From my last "massage" I knew her as "Tina". I was carrying a digital wire in my right front pocket and had my Olympus digital recorder on in my left front pocket. As I was walking in from the south side of the business I observed "Tina" outside and she followed me into the business.*

*As I opened the door she greeted me and seemed to remember me from the last time I had went in. We had a small conversation about how things were going and she then took me back to the same room as last time on the south east corner of the shop. I told her I wanted an hour again and she stated that was fine. I pulled out the $200 in department issued funds and counted $60 in front of her so she could see the amount of cash I was carrying. I gave her $60 and she left the room so I could get undressed and lay down on the massage table.*

*"Tina" came in a couple minutes later and stated I could have a 30 minute massage in broken English because they had appointments coming in. The other employee then came in while "Tina" was speaking with me and they had a conversation about the appointment again in some Mandarin Chinese and broken English. The other female has been identified as Li Jaing from our operation a couple weeks ago as well. Jaing then left the room and "Tina" started with the massage.*

*During the massage "Tina" left for a moment and came back in and told me I could have an hour massage because an appointment didn't show up and I agreed. During the massage I small talked with her about a boyfriend and what she does for fun. The entire massage went for 35 minutes and 32 seconds on my digital recorder. At approximately 26 minutes and 40 seconds I asked her about a "massagee" and gave her a hand sign for a "hand job". At first she stated she didn't understand and I kept giving her the "hand job" sign with my hand by moving it up and down. She then asked if I wanted one and I told her I did. I then asked he how much by holding my fingers up with 3, 4, and 5 fingers meaning $30, $40, or $50. She then stated very quietly $60 and held her finger over her mouth as to be quiet.*

*I then spoke with her for a couple of minutes and then gave the verbal sign that I have been solicited and that was the word "baseball". After a couple of minutes I didn't get a phone call that was supposed to mean get out from Sgt Jamison so I text him the word baseball and he then text me telling me to get home now. I told "Tina" I had to get back to work or I would get fired and got up to get dressed. I told her I would be back and she walked me out and I left the area.*

\

On October 30, 2012, the San Juan County Sheriff's Office SET team entered the Asian Massage at 203 S. Orchard in Farmington. Deputy Sanchez observed Wei Lu arrive in a gray 2011 Mazda bearing NM license number 426RHG. When the SET team arrived, a Caucasian male was inside one of the massage rooms. The male identified himself as Lynn Horrocks. He told me that he came to the Asian Massage parlor the previous night (October 29, 2012) and received a massage from one of the women at the massage parlor. Lynn said that it was the female who was sitting in the front room of the building. The SET team had previously identified that woman as Li Jiang.

Lynn said that during his massage with Li Jiang on October 29, she performed a "Happy Ending" on him. Lynn said that he returned to the business on October 30, and Li Jiang met him at the door. He asked if "The other girl" was available, and Li Jiang told him that she would be back in approximately 20 minutes. Lynn said that he read some e-mails for a while, and then "The other girl" arrived at the Asian Massage parlor. "The other girl" was also still present at the massage parlor, and she identified herself as Wei Lu.

Lynn said that he arranged for a one hour massage with Wei Lu, and gave her $60. He said that he was in the process of disrobing when the SET team arrived, and he had removed his shirt, but his trousers were still on. Lynn went on to say that he had not had the opportunity to discuss a "Happy Ending" with Wei Lu.

Deputy Sanchez conducted an interview with Li Jiang on October 30, 2012. During that interview, Li Jiang told Deputy Sanchez that she signed a contract with Wei Lu when she began to work for her. She said that the contract stated that she (Li Jiang) would not conduct any sexual acts at work. Li Jiang also said that she was told by Wei Lu that the contract was to protect the business, and that any sexual acts that were performed were to be at Li Jiang's discretion and that if the employees got into any trouble, they had performed and individual

action at their own discretion. She went on to say that Wei Lu told her that it was well known that Asian Massage parlors were sexual in nature, and that she (Li Jiang) needed to "Keep the customers happy."

From my training, I am aware that Oriental Massage parlors frequently have a book on the premises that is written by the owner or manager. Such books frequently contain material that has been translated from the original language to English. Some things that are commonly found in these books are English phrases that allow the massage employees to communicate sexual acts to their customers.

I am also aware from my training, that cash from criminal activity is frequently stored in a locked box or a safe at the business or residence of the employees of such an establishment.

I believe that evidence of License or Registration Required as well as illegal prostitution and possibly large amounts of cash could be secured in the Asian Massage building at 203 S. Orchard, or possibly in the gray Mazda that is parked outside the business.

Based on the above information, I respectfully request this Court to issue a search warrant for the above-listed location to search for and seize the above-described documents.

_____
Dave McCall
Complainant

_____
Deputy
Title (if any)

APPROVED:
Telephonically  approved  by  Brent Capshaw
_____
Assistant/Deputy District Attorney

Subscribed and sworn to or declared and affirmed to before me in San Juan County, State of New Mexico, this _____ day of
_____, 2012.

_____
Judge, Notary, or Other Officer
Authorized to Administer to Oaths

IN THE DISTRICT COURT
COUNTY OF SAN JUAN
STATE OF NEW MEXICO

DISTRICT COURT
SAN JUAN COUNTY NM
FILED

2012 NOV -2 AM 11:41

STATE OF NEW MEXICO,
    Plaintiff,

vs.

No. D-1116-SW-2012-113-3

510 Wall Street Apt #8

Defendant.

## AFFIDAVIT FOR SEARCH WARRANT

Affiant, being duly sworn upon his oath, states that I have reason to believe that in the following described business:

510 Wall Street Apt. #8

The building is a blue two story apartment building at 510 Wall Street. Apartment number 8 is the second door from the left on the second story of the building. The apartment doors face to the south. A gold colored number 8 is secured to the door of the apartment.

Items that are sought at 510 Wall Street apartment #8 include:

Evidence of prostitution, such as:

Condoms, Lubricant, Ledgers, books, or documentation of prostitution transactions.
Instruction manuals from the Chinese language to English describing sexual acts.
Large amounts of cash from the earnings of prostitution.

The facts tending to establish the foregoing grounds for issuance of this Search Warrant are as follows.

I am Dave McCall, a full-time, commissioned, salaried, and licensed police officer for the State of New Mexico, presently working as a Deputy for the San Juan County Sheriff's Office, assigned to the Special Enforcement Team. I have been a peace officer for approximately three years and have received training in and have experience investigating a range of felony crimes. I am the affiant herein. I learned the following facts from the sources noted and the investigation described.

In August of 2012, the San Juan County Special Enforcement Team (SET) received information that the Asian Massage parlor directly south of KB Dillon's restaurant in Farmington was possibly a house of prostitution.
The SET team set up a prolonged surveillance operation on the Asian Massage parlor to gather information on the clientele that frequented the establishment. As a result of the surveillance, the SET team was able to establish that the clientele for the Asian Massage parlor consisted entirely of male subjects.

The SET team learned that the business was owned by an Asian female named Wei Lu. Wei Lu also is listed as leasing apartment #8 in an apartment complex at 510 Wall St. in Farmington. Her vehicle, a 2011 Mazda bearing NM license number 426RHG has been seen at the Asian Massage parlor and the apartment at 510 Wall St.

Two Asian women who perform massages at Asian Massage have been identified as Li Jiang (d.o.b. of 08/08/1977) and Xiang Yu Xie (d.o.b. of 04/01/1955). Both women reside in Apartment #8 at 510 Wall Street. Neither of the women has reported an income in 2012.

Both women have been observed numerous times walking from 510 Wall St. #8 to the Asian Massage parlor before work. They have also been observed walking home from the Asian Massage parlor to 510 Wall after work. Neither woman has been observed walking to or from any other business or residence in Farmington during the surveillance.

On September 04, 2012, a silver / gray Mazda passenger car bearing NM license plate number 426RHG was seen parked in front of the Asian Massage parlor. An unidentified female entered the vehicle and drove to Wal Mart West in Farmington, where she purchased supplies with a credit or debit card, and then returned to Asian Massage at 203 S. Orchard, where the unidentified Asian female unloaded the supplies. The female then entered the Mazda and drove to 510 Wall Street in Farminigton.

On September 06, 2012, Deputy Sanchez and I attempted to gather information on the Asian Massage parlor at 203 S. Orchard in Farmington.

At 1717 hours Deputy Sanchez and I entered the establishment in an attempt to procure massages. Upon entering the front door, we were met by an Asian woman wearing a pink shirt. She appeared to be approximately 50 years of age, and had medium length black hair. She invited me into another room and we stood next to a massage table. The woman spoke very broken English, and it was difficult to communicate with her.

The woman said that $60 went to the owner of the business, and then she said "I work for you." I did not understand what that meant, and I asked her. She said "I work for you for "Teepo."" I asked her what "Teepo" meant. She put her hand in front of her chest with the fingers of her left hand bent, as if she were grasping a cylindrical object, and pumped her hand up and down in front of her face, saying "Teepo, I work for Teepo." I asked her if she meant that she worked for tips. She said "Yes, Teepo, Tip" while she continued to make the pumping motion. From my training, I know that the pumping motion is meant to convey masturbation.

I told the woman that I only had $60 and did not have enough for a tip. I then asked her if she accepted credit cards, she said that she did not. I told her that I was going to go speak to "my friend" in the lobby.

I went into the lobby and spoke with Deputy Sanchez. We agreed that I would give him my $60, so he would have enough money for a massage and a tip. I then exited the building and joined Sergeant Jamison in his patrol unit and monitored the listening device that Deputy Sanchez had in his pocket. I exited the Asian Massage parlor at 1721 hours.

The woman that I spoke to at Asian Massage was later identified as Xiang Yu Xie.

The following account is a report submitted by Deputy Sanchez for the evening of September 06, 2012:

*On September 6, 2012 Deputy Dave McCall and I went to the Asian Massage Parlor at 203 South Orchard in Farmington in an undercover status. We were both wearing plain clothes and had investigative funds to attempt to get a massage with a "happy ending" which from our investigation was a "hand job". We each had $60 cash (3, $20 bills) and the serial numbers had been photocopied prior to us arriving at the parlor.*

*At approximately 1715 hours we went into the shop and a asian female wearing a pink shirt a black capri style pants greeted us. We advised her we wanted massages and she took McCall back first. The windows are covered with very dark shades and you cannot see out of the parlor while inside or see in while walking up. There were two chairs on the north side of the waiting room with a magazine stand in between them. There were multiple Maxim magazines on the stand and the lighting was low and there was music playing quietly in the background.*

*I sat waiting for approximately 3 or so minutes and McCall and the asian female came back. McCall stated the cost was $60 for the owner and the masseuses worked for tips so he then handed me his money and left the parlor. The female then took me back through a curtain and we turned south (left) down a hallway and passed one room and went to the last room in the hallway. You entered the room through a door and there was a massage table in the middle of the room. There was a hook on the wall as soon as you walked into the room on the right and the asian female told me to put my clothes there and lie down. She then left the room and I got down to my underwear and layed down on my stomach.*

*She then came back into the room and started the massage. She kept asking if my buddy (McCall) was going to the bank and coming back for a period of time and I kept telling her it was probably across town and it would take awhile. She asked multiple times if I liked the massage and would just smirk everytime I said "Yes". She then asked if I was married and I told her yes (was wearing my wedding ring) and she stated I was young. I asked her how old she thought I was and she stated "24". I told her I was 25 and she kept going with the massage.*

*I asked her where she was from and she told me from China and she had been here for four*

*months now. She went to Los Angeles and then came here. I asked her what her name was and she stated "Tina". I remember from an erotic massage web site that one on the masseuses was Tina from the Asian Massage Parlor. She asked what I did and I told her I worked in the oilfield. At the end of the massage she did not solicit anything at this time but she did say for me to come back to her for a "really good time" next time. I then left the parlor after paying the $60 fee and a $20 tip at approximately 1815 hours. I then gave Sgt Jamison the other $40 so it could be put back with the investigative fund.*

On October 10, 2012, at approximately 1935 hours, I entered the Asian Massage parlor at 203 S. Orchard with the intent of gaining probable cause that prostitution is being conducted at the establishment. I went in with a digital wire (a listening device that was being monitored by other San Juan County Sheriff's Office personnel) and an Olympus digital recorder.

I was met at the door by an Asian female who has been identified as Li Jiang. I spent a moment in the lobby / waiting area, looking for a Massage license for the establishment, because in my training I had learned that a Massage license must be displayed in a conspicuous place for customers to examine. I had also learned that the individual employees who perform massages must display a license in a place that was visible from their workspace.

Li Jiang led me into a room that was adjacent to the waiting room and instructed me to remove my clothing and lay on the massage table. She told me that the massage cost $60 for one hour. I pulled a wad of money out of my trousers and peeled $60 off and gave it to her. Li Jiang saw that I still had a considerable amount of cash in the roll of money. She left the room and I removed my outer clothing, leaving my boxer shorts on. As I disrobed, I inspected the massage room, and did not find a massage license for Li Jiang. I arranged my clothing so that the digital wire was in my shirt pocket on top of a chair, and my Olympus digital recording device was in the back pocket of my trousers.

Li Jiang came back into the room and I lay down on the massage table face down. She grabbed the waistband of my boxer shorts and attempted to pull them down. As she tried to remove my shorts, she said "You take off." I reached back and pulled my underwear back up and told her that I wanted to keep my underwear on. She asked why, and I said "I'm shy." Li Jiang then placed a white towel on my back and began the massage.

Approximately 20 minutes and 30 seconds from the time I began recording (as measured by the timer on the Olympus digital recording device) Li Jiang asked "You want Happy?" I asked "What?" and she repeated "You want Happy?" I asked "Happy ending?" At this point Li Jiang made a stroking motion with her left hand. I know from training and experience that this motion was meant to mean that she wanted to manually stimulate my genitals. I recognized the masturbation of another as a sexual act as defined in the statute for prostitution. I asked her "You would do that?" and she nodded in the affirmative and put her finger to her lips to motion me to be quiet. She leaned close to my ear and said "For you." I asked her how much that cost, and she did not reply. I asked "Do you do that for a tip?" She giggled and said "Yes."

The massage continued while I was lying on my stomach. After a time, I mentioned the pre-

arranged word, and Sgt. Jamison sent me a text message. I told Li Jiang that the message was from my boss, and there was an emergency at work, and I would have to leave immediately. Li Jiang told me that she would give me $20 back because I had not been massaged for the entire hour. I told her to keep the money as a tip.

Li Jiang exited the massage room and I put my outer clothing back on. She gave me a bottle of water and I exited the Asian Massage parlor.

The following account is a report submitted by Deputy Sanchez from October 10, 2012:

*On October 10, 2012 at approximately 1900 hours I entered the Asian Massage Parlor at 203 S Orchard in Farmington attempting to solicit prostitution from the older female by the name of Xiang Yu Xie. From my last "massage" I knew her as "Tina". I was carrying a digital wire in my right front pocket and had my Olympus digital recorder on in my left front pocket. As I was walking in from the south side of the business I observed "Tina" outside and she followed me into the business.*

*As I opened the door she greeted me and seemed to remember me from the last time I had went in. We had a small conversation about how things were going and she then took me back to the same room as last time on the south east corner of the shop. I told her I wanted an hour again and she stated that was fine. I pulled out the $200 in department issued funds and counted $60 in front of her so she could see the amount of cash I was carrying. I gave her $60 and she left the room so I could get undressed and lay down on the massage table.*

*"Tina" came in a couple minutes later and stated I could have a 30 minute massage in broken English because they had appointments coming in. The other employee then came in while "Tina" was speaking with me and they had a conversation about the appointment again in some Mandarin Chinese and broken English. The other female has been identified as Li Jaing from our operation a couple weeks ago as well. Jaing then left the room and "Tina" started with the massage.*

*During the massage "Tina" left for a moment and came back in and told me I could have an hour massage because an appointment didn't show up and I agreed. During the massage I small talked with her about a boyfriend and what she does for fun. The entire massage went for 35 minutes and 32 seconds on my digital recorder. At approximately 26 minutes and 40 seconds I asked her about a "massagee" and gave her a hand sign for a "hand job". At first she stated she didn't understand and I kept giving her the "hand job" sign with my hand by moving it up and down. She then asked if I wanted one and I told her I did. I then asked he how much by holding my fingers up with 3, 4, and 5 fingers meaning $30, $40, or $50. She then stated very quietly $60 and held her finger over her mouth as to be quiet.*

*I then spoke with her for a couple of minutes and then gave the verbal sign that I have been solicited and that was the word "baseball". After a couple of minutes I didn't get a phone call that was supposed to mean get out from Sgt Jamison so I text him the word baseball and he then text me telling me to get home now. I told "Tina" I had to get back to work or I would get fired*

*and got up to get dressed. I told her I would be back and she walked me out and I left the area.*

\
On October 30, 2012, the San Juan County Sheriff's Office SET team entered the Asian Massage at 203 S. Orchard in Farmington. When we arrived, a Caucasian male was inside one of the massage rooms. The male identified himself as Lynn Horrocks.. He told me that he came to the Asian Massage parlor the previous night (October 29, 2012) and received a massage from one of the women at the massage parlor. Lynn said that it was the female who was sitting in the front room of the building. The SET team had previously identified that woman as Li Jiang.

Lynn said that during his massage with Li Jiang on October 29, she performed a "Happy Ending" on him. Lynn said that he returned to the business on October 30, and Li Jiang met him at the door. He asked if "The other girl" was available, and Li Jiang told him that she would be back in approximately 20 minutes. Lynn said that he read some e-mails for a while, and then "The other girl" arrived at the Asian Massage parlor. "The other girl" was also still present at the massage parlor, and she identified herself as Wei Lu.

Lynn said that he arranged for a one hour massage with Wei Lu, and gave her $60. He said that he was in the process of disrobing when the SET team arrived, and he had removed his shirt, but his trousers were still on. Lynn went on to say that he had not had the opportunity to discuss a "Happy Ending" with Wei Lu.

Deputy Sanchez conducted an interview with Li Jiang on October 30, 2012. During that interview, Li Jiang told Deputy Sanchez that she signed a contract with Wei Lu when she began to work for her. She said that the contract stated that she (Li Jiang) would not conduct any sexual acts at work. Li Jiang also said that she was told by Wei Lu that the contract was to protect the business, and that any sexual acts that were performed were to be at Li Jiang's discretion and that if the employees got into any trouble, they had performed and individual action at their own discretion. She went on to say that Wei Lu told her that it was well known that Asian Massage parlors were sexual in nature, and that she (Li Jiang) needed to "Keep the customers happy.".

Li Jiang also told Deputy Sanchez that the earnings from the illegal prostitution were at her residence, 510 Wall Street apartment #8.

From my training, I am aware that Oriental Massage parlors frequently have a book on the premises that is written by the owner or manager. Such books frequently contain material that has been translated from the original language to English. Some things that are commonly found in these books are English phrases that allow the massage employees to communicate sexual acts to their customers.

I am also aware from my training, that cash from criminal activity is frequently stored in a locked box or a safe at the business or residence of the employees of such an establishment.

I believe that evidence of illegal prostitution and possibly large amounts of cash could be secured

No. 0771    P. 5

in the Asian Massage building at 203 S. Orchard, or possibly in the gray Mazda that is parked outside the business.

Based on the above information, I respectfully request this Court to issue a search warrant for the above-listed location to search for and seize the above-described documents.

Dave McCall
Complainant

Deputy
Title (if any)

APPROVED:
Approved Telephonically by Brent Capshaw

Assistant/Deputy District Attorney

Subscribed and sworn to or declared and affirmed to before me in San Juan County, State of New Mexico, this 5th day of October, 2012.

Judge, Notary, or Other Officer
administer to Oaths


EXHIBIT

DISTRICT COURT
SAN JUAN COUNTY NM
FILED

IN THE DISTRICT COURT
COUNTY OF SAN JUAN
STATE OF NEW MEXICO

2012 NOV -2  AM 11: 48

STATE OF NEW MEXICO,
    Plaintiff.

No. D1116-SW-2012-114

vs.

203 S. Orchard, Farmington, NM

2011 Gray Mazda bearing NM license number 426RHG

    Defendant.

## SEARCH WARRANT

### THE STATE OF NEW MEXICO
### TO ANY OFFICER AUTHORIZED TO EXECUTE THIS WARRANT:

Proof by Affidavit for Search Warrant, having been submitted to me, I am satisfied that there is probable cause that the person named or property described in the Affidavit is located where alleged in the Affidavit and I find that grounds exist for the issuance of the Search Warrant. A copy of the Affidavit is attached and made a part of this Warrant. YOU ARE HEREBY COMMANDED to search forthwith the person or place described in the Affidavit between the hours of 6:00 a.m. and 10:00 p.m., unless I specifically authorized a nighttime search, for the person or property described in the Affidavit, serving this Warrant together with a copy of the Affidavit, and making the search and if the person or property be found there, to seize the person or property and hold for safekeeping until further order of the court.

Condoms, Lubricant, Ledgers, books, or documentation of prostitution transactions.
Instruction manuals from the Chinese language to English describing sexual acts.
Large amounts of cash from the earnings of prostitution.

You are further directed to prepare a written inventory of any person or property seized. You are further directed to file the return and written inventory with the Court promptly after its execution.

Dated the 30th day of Oct , 2012 . /s/ Sandra A Price
                                       Judge

## RETURN AND INVENTORY

I received the attached Search Warrant on _October 30_ _, 2012,_ and executed it on _October 31_, 2012, at _06:11_ o'clock (a.m.)(p.m.). I searched the person or premises described in the warrant and I left a copy of the warrant with _THE BUSINESS_ together with a copy of the inventory for the items seized.

The following is an inventory of property taken pursuant to the warrant.

_SEE ATTACHED DOCUMENT_

This inventory was made in the presence of _DAVE NEELY_

(name of applicant for the search warrant)

and _____

(name of owner of premises or property or other credible person witnessing the inventory).

This inventory is a true and detailed account of all property taken pursuant to the warrant.

_____
Signature of officer

_____
Signature of owner of property or other witness

Return made this _____ day of _____, 2012, at _____ (a.m.) (p.m.)

_____
Judge/Clerk

After careful search, I could not find at the place or the person described, the property described in this warrant.

_____             _____
Date                                                            Officer

DISTRICT COURT
SAN JUAN COUNTY NM
FILED
2012 NOV -2 AM 11: 51

Dated the _30th_ day of _Oct_ 2012. _Sandra Ahern_

_Judge_

_No night time search authorized_

## RETURN AND INVENTORY

I received the attached Search Warrant on _October 30_, 2012, and executed it on _October 31_, 2012, at _0844_ o'clock (a.m) (p.m.). I searched the person or premises described in the warrant and I left a copy of the warrant with _The Residence_ together with a copy of the inventory for the items seized.

The following is an inventory of property taken pursuant to the warrant.

_SEE ATTACHED DOCUMENT_

This inventory was made in the presence of _Dave McRae   R.O. Webb_

(name of applicant for the search warrant)

and _____

(name of owner of premises or property or other credible person witnessing the inventory).

This inventory is a true and detailed account of all property taken pursuant to the warrant.

_R.O. Webb_

Signature of officer

_____ R505_

Signature of owner of property or other

witness

Return made this _____ day of _____, 2012, at _____ (a.m.) (p.m.).

_____

Judge/Clerk

After careful search, I could not find at the place or the person described, the property described in this warrant.

_____          _____

Date                                               Officer

D-1116-SW-2012-11.

510 WALL



DISTRICT COURT
SAN JUAN COUNTY NM
SHERIFF
NOV 11: 45

# San Juan County                   Sheriff's Office

## Search Warrant Inventory Sheet

Page __1__ of _____ Pages       Time Started: _08: 14_ ☒ AM ☐ PM

Date: _6/31/12_                   Time Ended: _09: 14_ ☒ AM ☐ PM

| Item # | Item Description | Location Recovered | By | Time |
|---|---|---|---|---|
| 1 | CASH - 1180 CASH  100's 50's 20's | Pillow case FRONT ROOM (LIVING ROOM) | D. McCall | 8:25 |
| 2 | CASH - 2000  20's | Under mattress (living room) | D. McCall | 8:30 |
| 3 | LEDGER SHEETS | FRONT ROOM BESIDE OVEN | D. McCall | 8:55 |
| 4 | LEDGERS 5TT + MISC PAPERWORK CHECKBOOK | BACK BEDROOM NEXT TO BATHROOM | D. McCall | 09:41 |
| 5 | MISC PAPERWORK & LEDGER | PINK BAG IN BACK BEDROOM NEXT TO BATH | D. McCall | 08:48 |
| 6 | CUSTOMER LETTER | CORNER OF BACK BEDROOM | D. McCall | 08:50 |
| 7 | MISC DOCUMENTS + PICTURE OF WELL W | ORANGE BAG IN CORNER OF BACK BEDROOM | D. McCall | 08:55 |
| 8 | BANK OF AMERICA LOTUS MASSAGE ACCT. WFD | SHELF IN BACK BEDROOM | D. McCall | 09:02 |
| 9 | WHITE + GREEN THUMB DRIVE | PLASTIC BAG NEXT TO BED | D. McCall | 09:05 |
| 10 | SWANN DVR INSTRUCTION BOOK/CD | BACK BEDROOM CLOSET | D. McCall | 09:10 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

PACKAGED W ITEM 7 D.M

Copy of inventory sheet left with: _LEFT IN RESIDENCE_

Signature: _____

Inventorying Officer(s): _DAVE McCALL R582_   _D. McCall_

_A. Jamison  1505_   _____

**211 South Oliver
Aztec, NM 87410
(505) 334-6107**

White - Court          Yellow – Defendant's Copy          Pink – Service Copy

EXHIBIT 3

IN THE MAGISTRATE COURT
COUNTY OF SAN JUAN
STATE OF NEW MEXICO

STATE OF NEW MEXICO,
     Plaintiff,

vs.                             No._____

Wei Lu
DOB: 1/7/64
LKA: 510 N Wall #A8 Farmington, NM 87401
     Defendant

### AFFIDAVIT FOR SEARCH WARRANT

Affiant, being duly sworn upon his oath, states that I have reason to believe that in the following described property:

> *Acer Laptop computer, serial number LUSB00219702800A942000,*
> *Silver, Toshiba laptop computer, serial number PSME4Q0L002,*
> *A green and white USB portable hard drive,*
> *An 8 channel Black and Silver Swann brand DVR (Digital Video Recorder) S/N:2494010110953*

*On the items described above, there is now evidence of (Promoting Prostitution), including but not limited to:*

> documentation related to illegal business activity, including, but not limited to, documents identifying the illegal business and its clients, contracts related to the business, applications or agreements between employees and employers and/or customers, receipts, payment records, ledgers or logs of prostitution, calendars, e-mails, bank deposits of undocumented monies and photographs, along with, any video recordings of Wei Lu or her employees performing sexual acts on clients and or video recording of Wei Lu or her employees receiving money for sexual acts.

The facts tending to establish the foregoing grounds for issuance of this Search Warrant are as follows.

I am Jacob Sanchez, a full-time, commissioned, salaried, and licensed police officer for the State of New Mexico, presently working as a Deputy Sheriff for the San Juan County Sheriff's Office Special Enforcement Team (S.E.T). I have been a peace officer for approximately four and a half years and have received training in and have experience investigating a range of felony crimes. I am the affiant herein. I learned the following facts from the sources noted and the investigation described.

On October 31, 2012, the SET team executed search warrants, see original  against Asian Massage, at 203 S. Orchard in Farmington, and against the gray Mazda bearing NM license number 426RHG, see affidavit for search warrant D-116-SW-2012714. The SET team also executed a search warrant against 510 Wall Street apartment #8, Farmington, NM. See original search warrant, D-1116-SW-2012-113-3.

During the search of Asian Massage, the SET team found several ledgers and financial documents, as well as $5348 in cash. One of the ledgers was found in Li Jiang's purse, and it appeared to document the daily amount of tips she received at work. Also found in the office/bedroom from Asian Massage were two laptop computers and a DVR recording device that was attached to a camera system. The DVR was connected to a screen which showed four angles from cameras connected to the walls of the business. One angle showed the lobby of the business. The other three angles displayed the entrances to all three of the massage rooms. A partial view of each room was observed, and consisted of a partial view of the massage table where clients would lay down to receive their massages and sexual acts.

I believe that the DVR will contain video recordings of the sexual acts performed by Wei Lu and her employees on clients that visited the business. I also believe that the video recordings may reveal money transactions for the sexual acts performed on clients. I believe this because the video angles that were observed on the screen show a partial view of each massage room.

During the search of 510 Wall Street, the SET team found $3180 in cash, and several other ledgers. During an interview with Li Jiang on October 30, 2012, she stated that she had cash that she had earned from illegal prostitution at the apartment. When asked where the money was, she said that the money was where she slept, in the pillow case. Upon searching the front room, $1180 was found inside a pillow case that was on a mattress on the floor. An additional $2000 was found between the mattress and the wall in the same area. Due to Li Jiang's statement about where her money was kept, and the fact that the SET team found money in the spot that she described, the front room was possibly Li Jiang's room.

Also found at 510 Wall Street were numerous copies of reviews from the website Erotic MP.com, Rubmap.com, and a search page for erotic massage parlors in Albuquerque and in Farmington. These documents, as well as several pictures of Wei Lu, were found in a back room at 510 Wall #8 in a suitcase full of women's clothing. Also in the suitcase was Wei Lu's Divorce Decree. There were numerous articles of US Mail with Wei Lu's name on them in the room, as well as other documents with Wei Lu's name on them. In this same bedroom, a USB travel drive was found inside a plastic sack with clothing. Based on the articles of US Mail addressed to Wei Lu, the pictures of Wei Lu that were found in the room, her Divorce Decree that was inside a suitcase in Wei Lu's room with the erotic massage parlor reviews, the back room was probably Wei Lu's room.

The reviews that were found in Wei Lu's room at 510 Wall Street #8 describe sexual acts being performed for money by several of the masseurs at Asian Massage in Farmington and one for Lotus Massage in Albuquerque. The reviews describe one of the women who called herself Vivian and said that she is probably the "mamasan." One of the documents found in this room was addressed to Vivian Wei Lu. It is believed that "Vivian" is an alias that is used by Wei Lu. There was also a document found at Asian Massage that was made out by "Vivian Lu." This document was an application for internet service.

Several of the reviews have hand written notes on them, including user names for the erotic review sites and hand written descriptions of sexual acts, including prices, that are being performed at both massage parlors.

During his interview with Li Jiang, I learned that Xiang Yu Xie had left the Farmington area on October 29, and gone to Los Angeles, California. During the surveillance of 510 Wall #8, the SET team learned that Xiang Yu Xie did reside at apartment number 8 at 510 Wall Street. One of the two bedrooms at 510

Wall Street #8 had a bare mattress in it with no bedding. There was a very small amount of women's clothing still in the room, and no personal items. The room looked as if it had been recently vacated. The condition of the room supports Li Jiang's statement that Xiang Yu Xie had left for Los Angeles.

Based on the fact that Deputy McCall have been solicited by both women at Asian Massage, and I have been solicited by Xiang Yu Xie, I believe that there is probable cause that prostitution is taking place at Asian Massage, 203 S. Orchard in Farmington. The copies of the erotic review website pages that were found in Wei Lu's room at 510 Wall #8 show that Wei Lu is aware of the illegal prostitution that was taking place at Asian Massage. This indicates that Wei Lu, the owner of Asian Massage, is promoting the illegal practices that are taking place in her massage parlor.

It is requested that authorization be given to conduct a search of the above two computers, the USB portable drive, the DVR including central processing units; internal and peripheral storage devices such as fixed discs, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical storage devices or other memory storage devices; peripheral input/output devices such as keyboards, printers, video display monitors, optical readers, and related communications devices such as modems; together with backup media, system documentation, software and instructional manuals.

Information is being sought from the above items which were found on the premises for documentation related to the business including, but not limited to, documents identifying the business and/or clients, contracts related to the business, applications or agreements between employees and employers and/or customers, receipts, payment records, ledgers or logs of prostitution, calendars, e-mails, bank deposits of undocumented monies, documents, video and photographs. Since Wei Lu is only in town periodically, the information gathered will assist in obtaining information that she is running and has knowledge of prostitution going on in the business. It will also be possible to obtain pictures and videos of the known prostitution that was ongoing.

Based on the above information, I respectfully request this Court to issue a search warrant for the above-listed location to search for and seize the above-described documents.

_____
Jacob Sanchez S566
Complainant

_____
Deputy Sheriff
Title (if any)

APPROVED:
Telephonically approved B Capshaw

_____
Assistant/Deputy District Attorney

Subscribed and sworn to or declared and
affirmed to before me in San Juan County,
State of New Mexico, this *19th* day of
_____, 2012

_____
Judge, Notary, or Other Officer
Authorized to Administer to Oaths

IN THE MAGISTRATE COURT
COUNTY OF SAN JUAN
STATE OF NEW MEXICO

STATE OF NEW MEXICO,
     Plaintiff,
vs.                            No._____
Wei Lu
DOB: 1/7/64
LKA: 510 N Wall #A8 Farmington, NM 87401
     Defendant

**SEARCH WARRANT**

THE STATE OF NEW MEXICO
TO ANY OFFICER AUTHORIZED TO EXECUTE THIS WARRANT:

Proof by Affidavit for Search Warrant, having been submitted to me, I am satisfied that there is probable cause that the person named or property described in the Affidavit is located where alleged in the Affidavit and I find that grounds exist for the issuance of the Search Warrant. A copy of the Affidavit is attached and made a part of this warrant. YOU ARE HEREBY COMMANDED to search forthwith the person or place described in the Affidavit between the hours of 6:00 a.m. and 10:00 p.m., unless I specifically authorized a nighttime search, for the person or property described in the Affidavit, serving this Warrant together with a copy of the Affidavit, and making the search and if the person or property be found there, to seize the person or property and hold for safekeeping until further order of the court.

> documentation related to illegal business activity, including, but not limited to, documents identifying the illegal business and its clients, contracts related to the business, applications or agreements between employees and employers and/or customers, receipts, payment records, ledgers or logs of prostitution, calendars, e-mails, bank deposits of undocumented monies and photographs along with any video recordings of Wei Lu or her employees performing sexual acts on clients and or video recording of Wei Lu or her employees receiving money for sexual acts.

You are further directed to prepare a written inventory of any person or property seized. You are further directed to file the return and written inventory with the Court promptly after its execution.

Dated the _13th_ day of _Nov_, 2012. _____
                                                    Judge

**AUTHORIZATION OF NIGHTTIME SEARCH**

I further find that reasonable cause has been shown for nighttime execution of this Warrant. I authorize execution of this Warrant at any time of the day or night for the following reasons: